CONNECTICUT RIVER LUMBER CO. *v.* COLUMBIA.

Logs drawn from Vermont and delivered on the ice in Connecticut river in pursuance of a contract between the owner and the purchaser, and stored there temporarily awaiting transportation as soon as the ice shall break up in the spring, the purpose of the purchaser being to float the logs down the river to his mills in another state, his purpose being followed by actual transportation within a reasonable time, are in commercial transit, and are exempt from state taxation.

Section 13 of chapter 54, Gen. Laws, does not apply to logs deposited in Connecticut river awaiting transportation to market in another state, under the circumstances stated above.

APPEAL, from the refusal of the tax assessors of Columbia to abate a tax assessed to the plaintiffs in April, 1879. Facts agreed.

The selectmen were seasonably requested to abate the tax, but neglected so to do. The plaintiffs are a corporation, duly established by the laws of Connecticut, owning and running large mills for the manufacture of lumber at Hartford in that state. They also own a large amount of timber land in Pittsburg in this state, upon which, each fall and winter, they cut a part of the timber to supply their mills. They also own and run a store in Pittsburg. The working fund of the corporation is obtained by a sale of the stock, which at the time the tax was assessed was all owned by parties residing outside the state of New Hampshire, and was subject to taxation and taxes were paid thereon in the jurisdiction where it was owned. In the fall of 1878 Asa Smith, president of the corporation, and its business manager in New Hampshire and Vermont, bargained with certain parties for spruce logs to be drawn from Vermont and delivered on the banks of the Connecticut river and on the river in season for the spring drive of 1879, to be marked with the company's mark, at a stated price per thousand for all that were so delivered. There was no provision for delivery except as above mentioned.

The logs upon which the tax was assessed were cut upon land in Vermont owned by those selling the same, and were a part of the logs bargained as above mentioned, and were on the ice in Connecticut river in the town of Columbia when the tax was assessed, having been delivered from day to day during the winter of 1878–1879. The logs were in the river for the purpose of being transported by it to the company's mills at Hartford, as soon as the season should permit, there to be manufactured.

*Bingham & Aldrich, Ray, Drew & Jordan,* and *Bingham, Mitchells & Batchellor,* for the plaintiffs.

*Ladd & Fletcher* and *Dudley & Remich*, for the defendants.

SMITH, J.   Upon the facts stated, the logs upon which this tax was assessed were in transit, at the time of the assessment, from Vermont through this state and Massachusetts to Connecticut. They were not brought into the state and were not in the state for sale, profit. manufacture, employment, or for any other purpose except that of transportation, and, having been detained here so long only as was reasonably necessary in the use of the Connecticut river as a natural highway, they had no *situs* in this state for the purpose of taxation.   They were here temporarily, and for a purpose wholly excluding the idea of a permanent lodgment in the state, or of becoming incorporated with and forming a part of the personal property of the state.   The fact that the title passed from the vendors to the plaintiffs while the logs were in New Hampshire is immaterial on the question of transit, because the intention of the plaintiffs, when they contracted for the logs, to transfer them to Connecticut, was not at any time abandoned or changed.   It makes no difference, therefore, whether the title passed to the plaintiffs in Vermont or in New Hampshire.   The difference between logs cut in New Hampshire and those cut in Vermont, on this question, is, that the latter are brought here for the sole purpose of transportation, while the former were a part of the soil of the state until severed, and after being severed are a part of its personalty so long as they remain within its borders, and until they commence their final movement for transportation to the state of their destination.   If property in transit through the state could be taxed, these logs might have been taxed in each of the four states through which they were transported, in as many months, and if transported by rail they might have been taxed in each of the four states on the same day.

The purpose of the statute authorizing the taxation of logs (G. L., *c.* 54, *s.* 13) is to define what town shall have taxing jurisdiction of logs that are taxable in this state, thereby preventing conflict between different towns on the subject.   The legislature, by providing for the taxation of property of this nature having an actual *situs* in the state, did not intend to authorize its taxation when it is in the state merely for the purpose of transportation to market in another country or state.

The general rule is, that chattels which have a tangible existence are taxable in the state in which they are situated, but that chattels which are in transit from one state to another seeking a market are not considered as having a *situs* in every state through which they pass, so as to be subject to taxation.   Burr. Tax. 60; *State* v. *Engle*, 34 N. J. Law 425; *Conley* v. *Chedic*, 7 Nev. 336; *Carrier* v. *Gordon*, 21 Ohio St. 605; *Hoyt* v. *Commissioners*, 23 N. Y. 224, 240; *Parker Mills* v. *Commissioners*, 23 N. Y. 242; *Hays* v. *Company*, 17 How. 596; *St. Louis* v. *Company*, 11 Wall.

423, 432; *City of New Albany* v. *Meekin*, 3 Ind. 481; *Campbell* v. *Machias*, 33 Me. 419; *Desmond* v. *Machias Port*, 48 Me. 478; *Ellsworth* v. *Brown*, 53 Me. 519; *Catlin* v. *Hull*, 21 Vt. 152; *Ogilvie* v. *Crawford Co.*, 2 M'Crary 148. In New Jersey it is held that a tax on the property belonging to a citizen of another state, in its transit to market in other states, and which is delayed in that state (New Jersey), not for the purposes of sale, but merely for separation and assortment, for convenience of shipment to its destination, is a tax on commerce among the states. *State* v. *Engle*, 34 N. J. Law 425. Whether the doctrine that property in a state, merely in transit, is not subject to taxation, is founded on interstate comity, or on the principles of natural justice, or to avoid double taxation, or because such taxation would violate that clause of the constitution of the United States (art. 1, *s.* 8) which prohibits the taxation of interstate commerce, it is unnecessary to determine. The great weight of authority is against such taxation, and of the correctness of the rule we have no doubt.

*Tax abated.*

ALLEN, J., did not sit: the others concurred.